## FRY et al. v. SWIFT.

No. 21405. Opinion Filed May 16, 1933.

N. B. Johnson, Co. Atty., Dennis W, Bushyhead, Co. Atty., and W. H. Kornegay, for plaintiffs in error.

Hamilton, Gross & Howard, for defendant in error.

McNEILL, J. This suit was originally instituted in the district court of Rogers county by the First National Bank of Claremore, Okla., against the Rogers county drainage district No. 1, to recover upon certain warrants and claims which had been approved by the board of county commissioners of said county. These claims arose out of a drainage project, and were incurred prior to the final report of the viewers The parties will be referred to as they appeared in the trial below.

The board of county commissioners of Rogers county asked leave to intervene and show the facts. It filed an answer, denying that its members were the drainage commissioners for district No. 1. It also alleged, in substance, that Rogers county drainage district No. 1 did not exist and never had; that the proceedings to establish said drainage district were finally dismissed on February 7, 1917, and thereafter never had any existence; that all of said claims were allowed in violation of section 26, art. 10, of the Constitution, which section, in part, is as follows:

"No county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election to be held for that purpose; * * *"

—that the action could not be maintained because no drainage commissioner had been appointed, and that such drainage commissioner was a necessary party before an action could be maintained; that the bonds, conditioned to pay all expenses of viewers, surveyors, notices, all costs and expenses of such ditch or drain, if for any reason the same was not finally made or constructed, was signed by Rogers county drainage district No. 1, as principal; that the county commissioners had no authority to execute a bond on behalf of the district, whereby obligations were created against the district; and that said district was not liable thereon; that the only persons who were liable thereon were the individuals signing the same as sureties; that any right of action on said warrants was personal to the holders of the warrants and certificates, and that they were not assignable; that the only authority the county commissioners had in reference to issuing the warrants or certificates of indebtedness was to ascertain the amount of the cost of viewers, surveyors, and engineers, and tax the same as costs and charges to the sureties on the bond; that any remedy on the bond or the certificates was barred by the statute of limitations of five years, three years, and two years, respectively.

The action was tried by the court without the intervention of the jury; at the request of the county commissioners, the court made special findings of fact and conclusions of law. There was no evidence offered on behalf of the defendant.

The findings of fact, in substance, found that Rogers county drainage district No. 1 was duly formed under the drainage laws of Oklahoma; that all the requirements on behalf of the drainage law were made in the formation of the district; that necessary preliminary expenses were incurred; that the county commissioners required the drainage district to execute two bonds in the sum of $15,000 and $6,000, respectively; that the bonds were duly approved by the chairman of the board of county commissioners, as chairman of said drainage district No. 1 of said Rogers county; that there were certain claims for work, labor, and services filed by various persons, viewers, surveyors, and engineers against said district; that said claims were duly audited by the board of county commissioners, sitting as drainage commissioners for said district; that warrants were issued as evidence of said indebtedness against said dis-

trict; that on February 7, 1917, subsequent to the incurring of said indebtedness and auditing of said claims, the board of county commissioners entered an order dismissing said proceedings without making any provision for paying of said claims or obligations; that no petition signed by 50 per cent. of the resident landowners, or by the owners of 50 per cent. of the total acreage of the land embraced in said district, was filed; that no proceedings subsequent to February 7, 1917, were had toward the further progress of the district; that the report of the viewers was filed, but was not approved; that no drainage commissioner had been appointed for the reason that the board of county commissioners attempted to dismiss the drainage proceedings to dissolve the district before approving the report of the viewers; that no assessment or levy of any taxes was ever made to discharge the obligation of the drainage district; that there was no money on hand to liquidate said indebtedness; that the defense in the case was made by the board of county commissioners.

The conclusions of law were that Rogers county drainage district No. 1 was duly and regularly established, as determined by this court in the case of Board of County Com'rs of Rogers County v. Lipe, 45 Okla. 685, 146 P. 713.

The court also concluded that the action of the board of county commissioners on February 7, 1917, whereby it attempted to dissolve said district, was null and void, for the reason that the district could not be dismissed or dissolved without paying the valid obligations of said district; that the board of county commissioners constituted the drainage commissioners of said district; that the warrants and claims pleaded and proved in plaintiff's petition were valid obligations against said district; that they arose upon contract; that they were assignable; that the bar of the statute of limitations had not run; that plaintiff was entitled to maintain the action against the district for the reason that no drainage commissioner had ever been appointed, and that such commissioner could not be appointed except by action of the defendant; that it had refused to act, and that to permit it to avoid liability, because no drainage commissioner had been appointed, would permit it to take advantage of its own wrong, and it would be depriving plaintiff of his property without due process of law; that all of said claims had been duly audited and allowed as proper charges

against the district; that they had become legal obligations; that they represented indebtedness for special improvements, and were not governed by said section 26, art. 10 of the Constitution; that plaintiff was entitled to judgment against defendant upon the several causes of action.

It appears that the defendant, plaintiff in error, contends:

(1) That the board of county commissioners, as shown by the petition filed in this case, dismissed the proceedings after the drainage proposition was started in Rogers county, and never appointed a drainage commissioner; that the drainage district, though properly organized, could not be sued except through the medium of a drainage commissioner, and that an action could not be maintained against the district without a drainage commissioner having been appointed and made a party defendant.

(2) That the plaintiff, A. A. Swift, assignee of the First National Bank of Claremore, who was substituted as plaintiff in lieu of the First National Bank of Claremore, by reason of the failure and insolvency of said bank, which had been taken over by the State Banking Department, had asked the court to dismiss the case because he did not want to prosecute the suit and did not want any judgment rendered; that by reason thereof the action should have been dismissed.

(3) That this action is based upon warrants issued against the bonds; that no amount was set opposite the name of the drainage district in said bonds, and that there was no liability against the drainage district even if it had authority to make said bonds, and that no authority to make such bonds existed as a matter of law.

(4) It is also contended that the board of county commissioners had only such powers and liability as are prescribed by the statutes creating the district · that, under this authority, the commissioners would be limited to issuing certificates of indebtedness; that if any liability accrued on the certificates of indebtedness secured only by said bond, the only person who had received such certificate could maintain a suit on the bond and that the bank could not by assignment acquire any right to sue the district.

(5) That the Commissioners dismissed all the proceedings with reference to proceedings with the drainage district on Feb-

ruary 7, 1917; that no appeal was taken therefrom; that the commissioners had full jurisdiction of the matter; that their judgment, no matter how erroneous, in dismissing the entire proceedings, was final; that the drainage district never reached the stage where it could be sued; that the only remedy of those who actually had certificates of indebtedness was to sue the sureties on the bond.

(6) That the court committed error in receiving testimony to the effect that when the proceedings were dismissed no written protest was filed; that such evidence contradicted the order of dismissal; that it was discretionary with the commissioners to act on the matter; but that, when at any stage of the proceedings 50 per cent. of the resident landowners, or the owners of 50 per cent. of the total acreage of the land embraced in such district, filed a remonstrance against the proceedings, it was the statutory and mandatory duty of the commissioners to dismiss the proceedings.

(7) That as the suit was not started until April 3, 1923, and as proceedings were dismissed by the Commissioners in February, 1917, the statute of limitations has run.

It is the contention of the plaintiff, defendant in error:

(1) That the only thing to be determined by the court is whether or not the findings of fact and conclusions of law are correct; and if they are, the judgment should be affirmed.

(2) That by reference to sections 6055 and 6042, C. O. S. 1921 [secs. 10017 and 13004, O. S. 1931], it was the intention of the Legislature to provide specific duties for the drainage commissioner, but it is nowhere provided that, in suits on warrants, contracts, etc., the drainage commissioner is a necessary or proper party; that to deny plaintiff the right to maintain this action would permit the defendant to take advantage of its own wrong; that defendant cites no authority which holds that a drainage district is not liable for its warrant obligations, or that an action cannot be maintained against it to recover a judgment thereon; that the district itself, through the drainage commissioners, failed to appoint a drainage commissioner, and thereby made it impossible to make such drainage commissioner a party defendant.

(3) That the various causes of action are assignable.

(4) In reference to the dismissal proceedings, counsel for plaintiff asserts that section 6046, supra [sec. 13008, O. S. 1931], refers to the viewers appointed under the provisions of section 6044, supra [sec. 13000 O. S. 1931]; that these were preliminary viewers to recommed as to the necessity and practicability of the improvement project; that when their report is made, and objections, if any, are filed, or if the commissioners find against the improvement, the petition may be dismissed as provided in section 6045, supra; that up to this time there is no district, but if, as provided by section 6046, supra, the commissioners find in favor of making the improvements, the lands found to be benefited will constitute the drainage district, which is then designated by name and number; that then and then only can the bonds set up in the petition be given as provided by section 6047, supra; that when these preliminaries had been completed, Rogers county drainage district No. 1 was an existing quasi municipal corporation, as was determined by this court in Board of Co. Com'rs v. Lipe, 45 Okla. 685, 146 P. 713.

(5) That the statute of limitations has not run; that limitations do not begin to run against warrants issued by municipal corporation until there is sufficient money in a fund to be created with which to pay the warrants.

It appears that this is the third time some phase of this drainage project has come to this court.

The first case was the Board of Commissioners of Rogers County v. Lipe, supra (decided February 23, 1915), and the consolidated case of Broadwell v. Dirickson, Farmers Bank & Trust Co. v. Dirickson, and First National Bank of Claremore v. Dirickson, 85 Okla. 242, 205 P. 751 (decided March 21, 1922). Reference will hereafter be made to the Lipe Case, supra.

In the Broadwell Case, supra, an application was made for a writ of mandamus against Dirickson et al., constituting the board of county commissioners of Rogers county, to compel them, as the drainage board of said district No. 1, to make an order approving and confirming the report of the viewers of said district, filed in the office of the county clerk of said county December 30, 1916, and to compel said board to cause an assessment to be made and levied upon the land situated in the drainage district sufficient to pay certain warrants issued by the commissioners. Ap-

parently the same certificates of indebtedness are involved in the instant case.

The pleadings in the Broadwell Case presented issues of fact and the appeal was made on the basis of the error of the trial court in overruling a motion for judgment on the pleadings. This court held that the trial court committed no error in overruling said motion for judgment on the pleadings, as the pleadings presented issues of fact to be tried. The trial court dismissed the petition and this court affirmed that action.

It is necessary to consider applicable sections of chapter 38, O. O. S. 1921 [chap. 70, O. S. 1931], known as the Oklahoma State Drainage Act. Section 6040, C. O. S. 1921 [sec. 13002, O. S. 1931], provides that the board of county commissioners may form one or more drainage or improvement districts, and shall have exclusive jurisdiction to hear and determine all contests and objections to the creation of such district, and all judgments rendered by such commissioners in relation to such proceedings shall be final except as to those questions for which an appeal is provided as set forth in section 6058, C. O. S. 1921 [sec. 13020, O. S. 1931], as follows:

"Any person aggrieved may appeal from the order of the commissioners, and upon such appeal there may be determined either or any of the following questions:

"First. Whether just compensation has been allowed for property appropriated;

"Second. Whether proper damages have been allowed for property;

"Third. Whether the property for which an appeal is prayed has been assessed more than it will be benefited, or more than its proportionate share of the cost of the improvements."

Section 6043, C. O. S. 1921 (sec. 13005, O. S. 1931), provides that before the commissioners shall establish any drain or improvement district, a petition signed by five or more residents of the county, who claimed to have lands affected by the proposed drain or improvement, must be filed with the county clerk, setting forth the extent and general designation of the proposed drain or improvement, and starting point, route, and terminus thereof, etc. In this section it is specifically provided as follows:

"There shall be filed with such petition a bond in a sum not less than $50 for each mile of length of the proposed drain or improvement, payable to the state of Oklahoma, signed by one or more of the petitioners and at least two good and sufficient sureties, conditioned for the payment of all costs and expenses if the prayer of the petitioners be denied or dismissed for any cause; which bond shall be approved by said commissioners."

Section 6044, C. O. S. 1921 [sec. 13006, O. S. 1931], provides for the appointment by the commissioners of the first set of viewers after the filing of a petition and approval of a bond, as set forth in section 6043, supra. This section, 6044, supra, defines the duties of the viewers who are required to view the line of the proposed drain or improvement, and, after actual view of the premises along and adjacent thereto, shall report whether the proposed improvement is practicable and necessary or of private or public utility and benefit.

Section 6045, C. O. S. 1821 [sec. 13007, O. S. 1931], provides, after the report of the aforesaid viewers is filed, for a hearing by the commissioners upon the petition and report of the viewers, and also as follows:

"If the commissioners shall, upon hearing, find against the improvement, they shall dismiss the petition and proceedings at the cost of the petitioners; and if such finding shall be in favor of the proposed improvement, the petitioners shall thereupon be released from their bond."

Section 6046, C. O. S. 1921 [sec. 13008, O. S. 1931], provides for the filing of written objections against the improvement. This section is as follows:

"Objections. Any person interested in land which will be affected by said proposed drain or improvement may file in the office of the county clerk, on or before the day set for the hearing of the report of the viewers, a written objection against the same, as located by the petition or report of the viewers, setting forth his grievance, which objection shall be by the commissioners filed with the petition, and heard and determined. If the commissioners shall find in favor of making the improvements, the lands which, as hereinafter provided, it may be found will be thereby benefited, shall, for the purpose of this chapter, constitute a drainage district, which shall be designated by name and number."

Section 6047, C. O. S. 1921 (sec. 13009, O. S. 1931), provides for a bond for expenses, and is as follows:

"The county commissioners may, in their discretion, after any drainage district shall be constructed, named and numbered, require such district, or any of the resident landowners therein, for and on behalf of such

district, to file with the county clerk a bond payable to the county commissioners, in an amount to be fixed by them, with at least two good and sufficient sureties, or a surety company, conditioned to pay all expenses of viewers, surveyors, notices and all costs and expenses of such ditch or drain, if for any reason the same is not finally made or constructed; and the county commissioners shall have the right to issue to all persons entitled, certificates of indebtedness, secured only by said bond, for services, labor and expenses in said drainage project, and any such person shall have the right in his own name, to maintain suit on said bond for the recovery of the amount due him upon such certificates so held by him."

Section 6048, C. O. S. 1921 [sec. 13010, O. S. 1931], provides, in part, in reference to the second set of viewers, surveyors, and engineers, their duties and expenses, as follows:

"The commissioners shall, by order, fix the compensation of the viewers, surveyors, or engineers, appointed by such commissioners under this act and such compensation of the viewers, surveyors, or engineers, so fixed together with the cost and expenses of the viewers, surveyors, or engineers, if any, in making such survey shall be itemized and filed with the commissioners and shall be by them taxed as costs and shall be recovered in the bond of the petitioners by proper action if said petition shall be denied or dismissed; and when the petition is sustained such compensation so fixed together with the costs and expenses, if any, shall be assessed and levied as costs, and included in the assessment as a part of the construction against the benefited district or districts."

Plaintiff concedes that the board of county commissioners of Rogers county, Okla., entered an order dismissing the proceedings in reference to the formation of said district after a hearing on the report of the second set of viewers, but contends that such dismissal was null and void for the reason that the same could not be dismissed without first paying the items of indebtedness sued on herein.

The record is silent as to whether 50 per cent. of the resident landowners, or the owners of 50 per cent. of the total acreage of the land embraced in the district, remonstrated and filed a protest against such improvement. It was the duty of the county clerk to enter in a book provided for that purpose, a complete record of all the acts of the board of county commissioners relative to the proceedings seeking to establish a drainage district. Section 6078, C. O. S. 1921 [13043, O. S. 1931].

In the case of Cobb v. Alberti, 38 Okla. 296, 132 P. 1075, this court, in the syllabus, said:

"Section 31 of Act of Legislature approved May 29, 1908 (Sess. Laws 1907-08, p. 314), makes it the duty of the county clerk to enter in a book provided for that purpose a complete record of all the acts of the board of county commissioners in establishing a drainage district and in authorizing the construction of a drainage ditch or public improvement therein, so that a complete history of all the things done shall be given by the record; and this record cannot be contradicted in a collateral proceeding by parol evidence."

In the case at bar it appears that counsel for plaintiff, defendant in error herein, announced to the court that he could not find the record of the proceedings concerning the organization of the drainage district and the dismissal of same after diligent search in the office of the county clerk of Rogers county, Okla.; thereupon counsel for plaintiff testified that he was present before the board of county commissioners on the 7th day of February, 1917, when the proceedings were dismissed by the county commissioners, and that there was no written protest filed by the property owners against proceeding with the work of constructing the drainage project. This evidence was objected to by the board of county commissioners of Rogers county as being incompetent, irrelevant and immaterial, and because no sufficient foundation had been laid for the introduction of secondary evidence. These objections were overruled, and the board of county commissioners of Rogers county then and there excepted. This evidence was not competent. The attorneys are not the keepers of the record. It was the duty of the county clerk to keep such records, and there is no showing that the county clerk had made such search and had failed to find such records, which the county clerk was enjoined by law to keep and preserve. However, it is immaterial in reference to such testimony.

The board of county commissioners was authorized under this record to dismiss the proceedings at any time within their discretion, and their judgment thereon was final. If, however, 50 per cent. of the resident landowners, or 50 per cent. of the owners of the total land embraced in such district, filed their written protest against such improvement, it was the mandatory

duty of the commissioners, under section 6051, supra, to dismiss the proceedings. In either event it is immaterial whether the commissioners dismissed the proceeding by reason of a protest filed, or in the exercise of their judgment after a hearing relative to all contests and objections to the creation of such district and all facts and circumstances pertaining to same. The commissioners had exclusive jurisdiction to hear and determine these matters, and their judgment rendered thereon in relation to such proceedings was final and cannot be subject to collateral attack, and it may be presumed that they fully performed their official duties.

It is urged by plaintiff that the county commissioners duly and regularly established the drainage district, and that this court so decided in the case of Board of County Commissioners of Rogers County v. Lipe, supra. Reference to the opinion in this case shows that the action was instituted by certain landowners who claimed to be affected by the proposed district, and that they sought an injunction against the board of county commissioners from taking any further steps looking toward or attempting to include in said proposed drainage district the lands of said plaintiff, and from issuing any tax warrants or certificates of indebtedness that would be a lien or charge upon their lands on the ground that the preliminary petition required by section 6043, C. O. S. 1921, did not contain a full description of the lands to be embraced in the proposed drainage district. At the time said suit was filed, the proceedings for the formation of the drainage district had reached the stage where the second set of viewers had been appointed by the district court and prior to the filing of their report. As we view this case, it does not support the contention of the plaintiff. It simply holds that the purpose of a preliminary petition required by section 6043, supra, for the formation of a drainage district is to bring the matters therein presented to the attention of the board of county commissioners that the petitioners seek to have a drainage district established in a certain locality, and that it then becomes the duty of the board to inquire into the alleged desirability of the project, in the manner provided by the various provisions of the Drainage Act. The first paragraph of the syllabus in that case is as follows:

"A petition for the construction of a drainage district signed by the requisite number of petitioners, pursuant to section 2963, Rev. Laws 1910, which contains a general description of the proposed drain, together with the starting point, route, and terminus thereof, is sufficient to confer jurisdiction upon the board of county commissioners."

In that case the court held the proceedings regular and sufficient to confer jurisdiction upon the county commissioners to proceed to determine whether the petition of the petitioners should be sustained or the proceedings should be denied in the manner provided by law. Until there has been a hearing upon the report of the second set of viewers, there is no statutory requirement for any definite determination of the exact land to be embraced in the proposed drainage district. There is nothing expressed in the Lipe Case, supra, to indicate that the county commissioners, after a full and fair hearing on the report of the second set of viewers, could not under the statutes dismiss the proceedings and thereby deny the relief that petitioners sought in the petition which they had filed.

Section 6046, C. O. S. 1921 [sec. 13008. O. S. 1931], defines what shall constitute a drainage district. The language is as follows:

"If the commissioners shall find in favor of making the improvements, the lands which, as hereinafter provided, it may be found will be thereby benefited, shall, for the purpose of this chapter, constitute a drainage district, which shall be designated by name and number."

As we construe these statutes, there can be no establishment of, or a determination of what lands shall constitute, a drainage district, until after a hearing has been held on the report of the second set of viewers.

Judge Lewis, of the Circuit Court of Appeals of the Eighth Circuit, in the case of Fetzer v. Johnson, 15 Fed. (2d) 145, in speaking of what lands shall constitute the district, in a very careful and well-reasoned opinion, after a close review of the various sections of our statute in reference to the Drainage Act, says:

"But it is too obvious for argument that the second set of viewers is expressly charged with the duty under the statute to make examination and determination of what land shall be included in the proposed district. We have searched in vain to find in the statute any requirement that the originating petition should set out a des-

cription of the land in the district, or that it should describe the boundaries of the district, or that it should contain allegations from which the aggregate acres in the district might be ascertained. Section 3049 expressly provides that if the commissioners, at the preliminary hearing on the petition and report of the first viewers, shall find in favor of making the improvements, the lands which may be benefited shall be found 'as hereinafter provided.' And the very next section gives to the second set of viewers the authority, and imposes on them the duty, to ascertain the lands and lots that will be benefited or damaged, and to file with their report a list thereof, and those lands, says the statute, shall constitute the district, subject to modification, by the board on the hearing. A plat of lands so found by the viewers is to be made and filed with their report. Plainly, this plat and said list of lands exhibit the proposed district, and until filed by the viewers and surveyors, no one could know what lands might be within the district."

Judge Lewis in the Fetzer Case, supra, also says:

"In Board v. Lipe, supra, opinion rendered February 23, 1915, the court repudiated the idea that the originating petition should disclose the aggregate acreage to be included in the district, or fix boundaries thereof, or describe the lands to be included. It is said, as we have just said, that that was a duty imposed upon the second set of viewers, and that following the provisions of the statute, there was no way to ascertain the acreage, or the aggregate thereof, until the second set of viewers had made their report and the board had taken action thereon. * * *

"The statute (section 3046) prescribes what the petition shall contain. It does not require a description of land or acreage. Indeed, it would be impossible to so frame the petition if the later sections of the statute are to be complied with and given any effect."

Holding, as we do, that the proposed drainage district was never established or constituted within the meaning of the Drainage Act, we next consider whether the county commissioners of Rogers county could create a liability against the proposed district, which was sought to be established by five or more residents of the county who claimed to be affected by the proposed drain or improvement by requiring a bond obligating said proposed district to pay expenses incidental to such project sought to be initiated by said petitioners.

At all times the county commissioners had before it for determination the question of sustaining or dismissing the petition filed by said petitioners. The commissioners had exclusive jurisdiction to hear and determine all questions presented to them under this petition, pursuant to the provisions of the Drainage Act. After the commissioners tentatively found in favor of the proposed improvement, sec. 6046, supra, but not the establishment or the constitution of the drainage district, at the conclusion of the hearing of the report of the first viewers, the petitioners were thereupon released from the bond (sec. 6045, supra) which they had given and filed with their petition pursuant to section 6043, supra, conditioned for the payment of all costs and expenses if the prayer of said petitioners was denied or dismissed for any cause. After the hearing on the report of the first set of viewers, the county commissioners were then in position to determine whether further proceedings should be had looking toward the final determination of the question of dismissal of the drainage proceedings, or as to whether the county commissioners would thereafter determine whether the project should be sustained as prayed for by petitioners, and the determination of the lands to be included in said drainage project in the event of sustaining the relief asked for by petitioners in the petition filed for the improvement district. It is obvious that further expenses were to be incurred after the hearing on the report of the first set of viewers. The second set of viewers were to be appointed by the district court, and surveyors or engineers were to be called into service, and compensation therefor and expenses in relation thereto were to be incurred incidental to the making and filing of the report of the second set of viewers. While this indebtedness was being incurred by both sets of viewers, it remained with the county commissioners to determine, after a full and complete hearing in the manner provided by the drainage act, whether the district would be established and constituted, or whether the proceedings, in the discretion of the commissioners, or by reason of a protest which could be filed under the provisions of section 6051, supra, would be sustained or denied.

A history of the Drainage Act shows that formerly no provision was made for the payment of the expenses to be incurred subsequent to the appointment of the second set of viewers. As to whether there is any authority for the commissioners to charge this liability in the event the proceedings are dismissed or denied against the pro-

posed district, we refer to the sections of the statute relating thereto, sections 6047 and 6048, O. O. S. 1921 [secs. 13009, 13010, O. S. 1931]. It is apparent that there appears to be language used in these sections which borders on vagueness and in apparent conflict in reference to the bond which may be required by the county commissioners. Section 6047 was incorporated in the Drainage Act by the Session Laws 1910, c. 79, sec. 2, approved March 24, 1910. The latter portion of section 6048, relative to the commissioners fixing the compensation of the viewers, surveyors, and engineers, and taxing these items as costs recoverable on the bond of the petitioners by proper action in case the petition was denied or dismissed, and in the event that said petition was sustained, that such compensation together with costs and expenses, be assessed and levied as costs and included in the assessment as a part of the construction against the benefited district, was an additional provision not included in the original act and was approved March 23, 1911, as shown by the Session Laws of 1910-11, chapter 132, sec. 2. Under this provision in section 6048, these items filed with the commissioners, being for the compensation for viewers, surveyors, or engineers, and the costs and expenses of the viewers, surveyors, or engineers, shall be taxed as costs and recovered on the bond of the petitioners by proper action if said petition shall be denied or dismissed. On the other hand, if the petition is sustained, the compensation to be fixed, including the costs and expenses, shall be assessed and levied as costs, and included in the assessment as a part of the construction against the benefited district. Under section 6047, it is therein specifically provided that the county commissioners may in their discretion, after the district has been constituted, require such district, or any of the resident landowners therein, to file a bond payable to the county commissioners, conditioned to pay the expenses of the viewers, surveyors, notices, costs, and expenses of such ditch or drain, if for any reason the same is not finally made or constructed, and the county commissioners had the right to issue to all persons entitled thereto certificates of indebtedness secured only by said bond, for services, labor, and expenses in said drainage project. In both sections of the statute it appears that the recovery for certificates of indebtedness can be had solely by reason of the same being secured by said bond in the event of the denial or dismissal of the improvement proceedings, and that this bond is the bond of the petitioners. Reading the two sections in the light of each other, it is obvious that these various items and expenses incurred can be recovered only in a bond of petitioners by proper action, and as the district in the instant case was not constituted as a drainage district, and the petition was denied, there can be no assessment of these costs and expenses as a part of the construction against the proposed district sought to be established or constituted.

Section 6047, O. O. S. 1921, does not authorize the county commissioners to file a bond for such district, creating a liability against said district for the payment of expenses of viewers, surveyors, notices, costs, and expenses of such ditch, or drain, if for any reason the same is not made or constructed. However, it was within the provisions of the Drainage Act that the commissioners, in their discretion, could require a bond to be executed by, or on behalf of, the petitioners, who were proposing this improvement and seeking to have the commissioners constitute the drainage district, whereby such petitioners or resident landowners in the proposed district would be obligated by said bond filed with the county clerk of said county, payable to the county commissioners in an amount fixed by the county commissioners, with at least two good and sufficient sureties, or a surety company, conditioned to pay all the expenses of viewers, surveyors, engineers, notices, and all costs and expenses of such ditch or drain, if for any reason the same was not finally made or constructed. The statute never contemplated that petitioners seeking a drainage project could saddle the compensation of viewers, surveyors, engineers, publication cost of notices, and other items, upon a proposed district which was sought to be created through the signing of a petition by five or more residents of the county who claimed to have lands affected by the proposed drain. It seems apparent that these expenses were to be borne by the petitioners initiating the project in the event the petition should be denied or dismissed.

In this case the bond which was filed seeks to bind the district. Such bond was unauthorized and void so far as it seeks to obligate the proposed district. This district was never organized, established, or constituted. It was never in esse and never passed beyond the stage of proposal. It could not sue or be sued. Montgomery

v. Krouch, 77 Okla. 51, 186 P. 218. It had no officers. No one had been authorized by statute upon whom service might be had. A judgment against the district, if rendered, could not have been collected by execution, as it had no property subject to execution.

Under this record, the county commissioners were not acting beyond, in usurpation of, or in excess of, their authority, in dismissing the drainage proceedings. As to the validity of the bond against the sureties appearing thereon, who are not before this court, we do not consider.

In the light of the foregoing, the judgment of the trial court is reversed and remanded, with directions to enter judgment for defendants.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, OSBORN, BUSBY, and WELCH, JJ., concur. BAYLESS, J., disqualified and not participating.