SEIKEL et al. v. GRIMES, County Treas.

No. 30009.   Oct. 28, 1941.

Rehearing Denied Nov. 25, 1941.

*119 P. 2d 59.*

John L. Goode and Mark Goode, both of Shawnee, for plaintiffs in error.

Claude Hendon, County Atty., and Byron Lamun, Asst. County Atty., both of Shawnee (E. F. Maley, of Okmulgee, of counsel), for defendant in error.

RILEY, J. This is an action commenced by plaintiffs in error, herein referred to as plaintiffs, against Stanley R. Grimes, as county treasurer of Pottawatomie county, herein referred to as defendant, to cancel of record certain special assessment charges against the land of plaintiffs.

Plaintiffs own 40 acres of land in the drainage area of Deer creek in Pottawatomie county. Proceedings to organize a drainage district included a petition for the creation of such district signed by 16 persons as owners of land to be affected. At that time L. C. Rooker was the owner of plaintiffs' land.

The amount first assessed against plaintiffs' land was $300, divided into ten annual installments. Bonds were provided for in 1927, due in ten annual installments. The last installment of the bonds was to mature December 27, 1939, but drew interest at 6 per cent from December 22, 1927. There was a charge against plaintiffs' land of $18 as interest for the year 1928.

An assessment in the sum of $30 and an interest charge of $19.44 was entered on the treasurer's books against plaintiffs' land for the year 1929. About May, 1929, an additional assessment appeared to have been made against plaintiffs' land in the sum of $20, but was entered on the treasurer's book at $27, so that for the year 1930 there was a charge entered against said land as principal in the sum of $33 and interest in the sum of $17.94. For the year 1931, there was a charge of $33 principal and $15.96 interest; a like charge of $33 principal and $13.98 was entered for the year 1932. All the charges down to that year were paid by L. C. Rooker.

For the year 1933 there was a like charge of $33 principal and $11.88 interest charged on the original and supplemental assessment. In addition thereto there appears to have been made an additional charge against plaintiffs' land in the sum of $55.05, representing its proportional share of a judgment which had been rendered in the federal court against the drainage district. The judgment bore interest and appeared to have been made payable in three annual installments. The additional charge on account of this judgment was $18.35 as principal and $5.92 interest, making a total charge for the year 1933 of $69.15.

Plaintiffs had, in the meantime, become the owners of the land involved. They paid the first half of the 1933 charges. There were like charges made for the years 1934 and 1935. For each of the years 1936 to 1938, inclusive, the charge was $33 with interest. The last half of the amount for 1933 and that of all subsequent years became delinquent.

The county treasurer threatened sale of the land and plaintiffs commenced

this action to cancel all unpaid assessments.

The trial court entered judgment canceling that part of the charge representing the supplemental assessment made in May, 1929, and the charges made on account of the judgment, but refused to cancel any part of the original assessment.

Plaintiffs appeal and contend that the court erred in not holding that the drainage district was never legally established and in refusing to cancel the original assessment and each unpaid installment thereof. The assignments of error are presented under three propositions.

The first proposition is that by reason of the record, the county commissioners never acquired authority to levy any assessments. A copy of the entire proceedings relative to the drainage district was introduced in evidence and is made a part of the case-made. Therefrom it appears that the petition filed with the county clerk is regular and sufficient in form. It appears to have been signed by 16 persons who represented themselves to be residents of Pottawatomie county and owners of land in the drainage district petitioned for and affected thereby.

The petition was filed August 11, 1926; it was endorsed "considered by board of county commissioners and approved this 11th day of August, 1926." On the same day the county commissioners entered an order appointing viewers and a surveyor to assist the viewers as provided in section 13006, O. S. 1931, 82 Okla. Stat. Ann. § 302. The viewers qualified. They made, and on August 30, 1926, filed, their report, concurred in by the surveyor.

On the latter date the county commissioners entered an order fixing the time for hearing the petition and report of the first viewers on the 30th day of September, 1926, and directed the county clerk to give notice of the time and place for said hearing by publication as required by law.

Due and proper notice was given and published, and proof of publication was filed. The report of the first viewers contained the following finding:

"After an actual view of the said line of the proposed drain and premises along and adjacent thereto we find that said proposed drain and improvement is practical, and necessary and of private and of public utility and benefit, and would be a benefit to the agricultural interest and a benefit to the public and corporate roads and a benefit to the public health."

On September 30, 1926, the date fixed for said hearing, the county commissioners made and entered the following order:

"Now, upon this the 30th day of September, 1926, a petition of Frank H. Seaton et al., for the establishment of a drainage district coming on for hearing, and the construction of a drainage ditch for said district, and it appearing that more than five persons, owners of lands included and to be assessed in said district, having petitioned for the establishment of said district, alleging that the same is necessary for sanitary and agricultural purposes, and that the construction of said ditch will be conducive to the public health and a public utility, and a board of viewers having been duly appointed for said district, and the said board of viewers did, upon the 30th day of August, 1926, duly report that said proposed ditch and drain was necessary for sanitary and agricultural purposes, and the same would be conducive to the public health and a public utility, and recommend that a drainage district be organized and constituted and due notice of time and place of said hearing having been duly published in the County Democrat, a newspaper of general circulation in the said county for two weeks, the last publication being more than ten days prior to the 30th day of September, 1926, at which time said matter was set for hearing and the petition coming on for hearing upon the said 30th day of September, 1926, and evidence being taken thereon:

"It is therefore hereby ordered and adjudged, by the board of county commissioners, that a drainage district be formed as petitioned for by the said

Frank H. Seaton et al.; to be known, named and constituted Deer Creek Drainage District No. 4, of Pottawatomie county, Oklahoma, to be composed of such territory as the board of viewers hereinafter to be appointed may designate, and is further ordered and directed that a petition and request be issued and directed to the judge of the district court of Pottawatomie county, Oklahoma, to appoint three disinterested freeholders from the regular jury list of names prepared for the district court of said county, who shall not be interested in the construction of said work, viewers for said district."

It may be noted that in said order there is no specific finding by the county commissioners that the proposed drain was necessary for sanitary or agricultural purposes or would be conducive to public health, or public safety, as mentioned in section 13010, O. S. 1931, 82 Okla. Stat. Ann. § 306. But immediately following the above order, the proceedings show the following entry:

"Before the Board of County Commissioners of Pottawatomie County, Oklahoma.

"In the matter of the Establishment of Deer Creek Drainage District No. 4 of Pottawatomie County, Oklahoma.

"Application to Judge to Appoint Viewers.

"To the Honorable Judge of the District Court:

"We, the undersigned, Board of County Commissioners of Pottawatomie County, Oklahoma, do hereby certify that we have found the establishment of the drain and improvement for Deer Creek Drainage District Number 4, of Pottawatomie County, Oklahoma, necessary for sanitary and agricultural purposes, and that it will be conducive to public health and of public utility, and have made and constituted a drainage district named Deer Creek Drainage District Number 4, of Pottawatomie County, Oklahoma, and do hereby request that the Judge of the District Court of the aforesaid County appoint three distinterested freeholders from the regular jury list of names prepared for the District Court of said County, who shall not be interested in the construc-

tion of said work and not of kin to any person interested therein, viewers of said District."

The application was presented to the district court on November 6, 1926, at which time an order was entered fixing the date of hearing said application for November 27, 1926, and directing that notice of the hearing of said application be given and published, and prescribed the form of such notice. The notice was duly published, and on November 23, 1926, the hearing was continued until November 29, 1926, the matter was heard and an order was entered appointing viewers. This order, among other things, recited:

"Now, on this 26th day of November A. D. 1926, this matter coming on for hearing, the same having been continued from the 23rd day of November A. D. 1926, to this date, for the appointment of three disinterested freeholders as viewers in the above matter, and the board of county commissioners of Pottawatomie county, Oklahoma, having verified to the judge of the district court of Pottawatomie county, Oklahoma, the facts that they had found the establishment of a drain for the proposed Deer Creek Drainage District Number 4, of Pottawatomie county, Oklahoma, is necessary for sanitary and agricultural purposes, and will be conducive to the public health, and a public utility, and constituted named and numbered Deer Creek Drainage District Number Four of Pottawatomie County, Oklahoma."

Second viewers are appointed and qualified, made their report, and finally fixed the amount of assessment against plaintiffs' land in the sum of $300.

The proceedings after the appointment of the second viewers by the judge of the district court appear to be regular and in proper form, and are not questioned by plaintiffs, except to say that the district was not legally created and that the assessments were void.

Plaintiffs contend that the county commissioners were without power or jurisdiction to create or establish a drainage district merely upon the report of the first viewers and surveyor. In support of this contention, plaintiffs cite

Fry et al. v. Swift, 164 Okla. 4, 22 P. 2d 94. Therein it is held:

"There can be no establishment or constitution of a drainage district within the meaning of the Oklahoma State Drainage Act until after a hearing has been held by the board of county commissioners on the report of the second set of viewers."

And:

"The second set of viewers is expressly charged with the duty under the statute to make an examination and determination of what land shall be included in the proposed district."

That is a direct holding that there can be no establishment or constitution of a drainage district under the Drainage Act until after a hearing has been held by the board of county commissioners on the report of the second set of viewers.

There is difficulty in reconciling said holding with the provisions of sections 13008 and 13009, O. S. 1931, 82 Okla. Stat. Ann. §§ 304 and 305; section 13007, O. S. 1931, 82 Okla. Stat. Ann. § 303, provides notice and hearing on the report of the first viewers.

Section 13008, O. S. 1931, 82 Okla. Stat. Ann. § 304, first provides that any person interested in land to be affected may file his protest on or before the day set for hearing of the report of the first viewers, objection must be heard and determined and filed with the petition. It then provides:

". . . If the commissioners shall find in favor of making the improvements, the lands which, as hereinafter provided, it may be found will be thereby benefited, shall, for the purpose of this chapter, constitute a drainage district, which shall be designated by name and number."

It is quite true that the lands to be included and the boundaries of the district are left for future determination, as in subsequent sections provided. But it is clear that if the county commissioners find in favor of making the improvement, they may designate by name and number a drainage district. The statute does not expressly state when the district is to be given its name and number.

But the next section, 305, 82 Okla. Stat. Ann., provides that the county commissioners may, "in their discretion," after any drainage district shall be constituted, named and numbered, require of such district or any resident landowners therein, for and on behalf of such district, a bond in an amount fixed by them, conditioned to pay all expenses of viewers, surveyors, notices and all costs and expenses of such ditch or drain, if for any reason the same is not finally made or constructed.

It is pointed out in Fry v. Swift, supra, that the law does not authorize the county commissioners to execute this bond on behalf of the district, and that the district has no property subject to execution to satisfy any judgment that might be obtained on a bond given by the district; that such a bond was void. It is also said that the district was never organized, established, or constituted.

It is further held therein that the county commissioners have execlusive jurisdiction to determine whether such improvements shall be made down to the final hearing on the report of the second viewers, and may dismiss the proceedings upon such hearing.

But it appears clear that the law contemplates some action by the county commissioners looking to the constitution and establishing of a drainage district at the hearing of the report of the first viewers. At least, they are authorized to designate the district by name and number. After that is done the commissioners may require a bond of any of the resident landowners on behalf of such district. If no district is established or constituted by the order of the county commissioners, then no bond could be given by a resident landowner on behalf of such district. In that case no provision could be made for the payment of expenses to be incurred in connection with the work of the second set of viewers.

In the instant case, the county commissioners, on the hearing of the re-

port of the first viewers, did find in favor of making the improvements and so certified to the district court. They required a bond by certain resident landowners on behalf of the district and fixed the amount thereof as provided in section 13009, O. S. 1931.

Every requirement of the Drainage Act was complied with; second viewers were appointed by the judge of the district court; they performed their duties in accordance to law. Their report was presented to the county commissioners, and after certain adjustments were made, the county commissioners adopted the report, including approval of the original assessment against plaintiffs' land in the sum of $300.

Bonds were issued and the improvements were completed. Considering the record as a whole, even though the order of the county commissioners establishing the district on the report of the first viewers may have been premature, their order designating a name and number for the proposed district was in conformity with law. When this was followed up by appointment of second viewers and approval of their report, the district was properly constituted, established, and created in conformity with the law. The original assessment against plaintiffs' land was properly made, and there was no error in sustaining said assessment to the extent of the $300.

What we have said renders it unnecessary to discuss plaintiffs' second and third propositions.

There is no appeal from that part of the judgment canceling the subsequent assessments against plaintiffs' land.

Judgment affirmed.

WELCH, C. J., CORN, V. C. J., and OSBORN, GIBSON, HURST, DAVISON, and ARNOLD, JJ., concur. BAYLESS, J., absent.